UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RAO SURYADEVARA,

                    Plaintiff,

  - against -

UNUM GROUP,

                    Defendants.
-------------------------------------------------------x

MEMORANDUM AND ORDER

12 Civ. 3651 (ILG) (RER)

GLASSER, Senior United States District Judge:

        Plaintiff Rao Suryadevara ("Suryadevara" or "plaintiff") brings this action against Unum Group ("Unum" or "defendant") for breach of contract and unjust enrichment of a disability insurance policy, seeking money damages and a declaratory judgment. Suryadevara claims that he suffered from two separate disabilities and, therefore, is entitled to greater benefits than he is currently receiving under the policy. Unum raises affirmative defenses of equitable estoppel and fraud, arguing that Suryadevara is bound by his prior representations that he suffered from one, continuous disability.

        Currently before the Court is Unum's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is hereby DENIED.

## BACKGROUND

        The following facts are taken from plaintiff's Complaint and documents attached to the Complaint or incorporated by reference; they are accepted as true for purposes of this motion.

        Plaintiff is a native of India who trained and worked as a physician outside the United States. Declaration of Patrick W. Begos in Support of Defendant's Motion to

1

Dismiss dated Dec. 10, 2012 ("Begos Decl."), Ex. C at 49-50 (Dkt. No. 8-1).[1]  He came to the United States in the 1980s where he first received training in internal medicine and then in cardiology.  Id.  In 1992, while a resident in internal medicine at Detroit Medical Center, plaintiff applied for and received disability insurance from Provident Life and Accident Insurance Company, which is now owned by Unum.[2]  Verified Complaint ("Compl.") ¶ 7, Ex. A at 1, 17 (Dkt. No. 1).

I.      **Disability Insurance Policy**

The insurance policy provides that in return for quarterly premiums that increase annually for five years, plaintiff will receive monthly benefits if he becomes either totally or residually disabled.  Compl., Ex. A at 3-4.  Plaintiff fully paid the required premiums under the policy.  Compl. ¶ 11.

   **A. Total and Residual Disability**

   Under the policy, "totally disabled means that due to Injuries or Sickness:

   1. you are not able to perform the substantial and material duties of your occupation; and

   2. you are receiving care by a Physician which is appropriate for the condition causing the disability."

---

[1] This exhibit contains correspondence between the parties and attached medical documentation.  Begos Decl. ¶ 4.  The Court may consider these materials because plaintiff relied upon them in drafting the Complaint.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).  All page numbers for this exhibit refer to ECF pages.

[2] The parties disagree over whether Unum or its subsidiary Provident Life and Accident Insurance Company is the proper defendant in this action.  Without expressing any opinion on this issue, the Court will refer to Unum as the defendant since the Court accepts all facts alleged in the Complaint as true for purposes of this motion.

Compl., Ex. A at 4.  "Sickness means sickness or disease which is first manifested while your policy is in force."  Id.

If plaintiff becomes totally disabled before his 65th birthday, then he will receive a fixed monthly benefit for the rest of his life and will no longer have to pay premiums. Id. at 3, 6.  The amount of the benefit depends on when the disability begins, and does not increase over time.  The benefit starts at $4,500 per month and increases as follows:

| Update Increase Date | New Monthly Benefit for Total Disability |
|---|---|
| 7/01/93 | $4,820.00 |
| 7/01/94 | $5,160.00 |
| 7/01/95 | $5,530.00 |
| 7/01/96 | $5,920.00 |
| 7/01/97 | $6,340.00 |

Id. at 3.

The policy defines "residually disabled" to mean that "due to Injuries or Sickness:

1. you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usually daily business duties for as much time as it would normally take you to do them;

2. you have a Loss of Monthly Income in your occupation of at least 20%; and

3. you are receiving care by a Physician which is appropriate for the condition causing disability."

Id. at 8.  If plaintiff becomes residually disabled while the policy is in effect, then he will receive a monthly benefit based on several complex formulas and will no longer have to pay premiums.  Id. at 8-11.

**B. Elimination Period**

All disability claims under the policy are subject to a 90 day "Elimination Period," during which time plaintiff will not receive benefits.  Id. at 3-4.  "These days need not be consecutive; they can be accumulated during a period of disability to satisfy an

Elimination Period." Id. at 4. A subsequent period of disability will not be subject to an additional Elimination Period "unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than twelve months after the end of the period."

Id. After 90 days, plaintiff is entitled to a refund of any premiums paid while totally or residually disabled. Id. at 6, 11.

### C. Notice of Claims

The policy requires plaintiff to provide written notice of disability claims within 20 days "or as soon as reasonably possible." Id. at 15. Plaintiff must also provide written proof of loss "within 90 days after such loss." Id. If plaintiff cannot reasonably provide written notice in time, then "the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so." Id.

## II. Plaintiff's Mental Health Problems

From 1992 through 1998, plaintiff pursued specialized training in cardiology. In 1995, plaintiff obtained a cardiology fellowship at Harlem Hospital, where he received high performance evaluations and a large salary. Begos Decl., Ex. C at 110, 124-25.

In 1996, plaintiff began behaving erratically.[3] He continued conversations after they ended and followed Dr. Eric Vanderbush, his supervisor and Chief of Cardiology at Harlem Hospital, outside the hospital. Id. at 109. Dr. Vanderbush characterized plaintiff as "delusional," and three doctors at Harlem Hospital, including Dr. Vanderbush, called plaintiff's behavior "bizarre." Id. Plaintiff's performance reviews and income began to drop accordingly. Id. at 110, 127-30.

---

[3] The record makes passing reference to a "psychotic episode" in 1993, but neither party argues that plaintiff's disability began prior to 1996. Id. at 40, 133.

Plaintiff claims that at some point during his cardiac fellowship, he narrated to Dr. Vanderbush the plots of what became the movies Titanic, Mission Impossible, and Gone in Sixty Seconds, and that various Hollywood producers and movie studios stole his ideas. Id. at 71-72. In May 2000, two years after completing his fellowship, plaintiff accused Dr. Vanderbush of recording these conversations and sued several film directors and studio production companies, even flying to California to personally serve director/producer James Cameron. Id. at 74-75, 109-110. All the lawsuits were dismissed. Id.

In May 2002, plaintiff moved to Danville, Illinois to work as a cardiologist in the Veterans Administration ("VA") Hospital, while his family remained in New York. Id. at 38, 70-71. In July 2002, while working at the hospital, plaintiff heard voices inside his head that he thought were real and harassing him. Id. at 71, 75, 90. After hearing the voices for between one and two weeks, plaintiff contacted the police, who took him to the emergency room. Id. at 55-56, 71, 75. The emergency room psychiatrist evaluated plaintiff as mentally ill and started him on antipsychotic medication. Id. From July 2002 through November 2002, plaintiff was under the care of a psychiatrist who diagnosed him with an "Adjustment Disorder with Mixed Emotions" and continued him on antipsychotic medication, although it is unclear if he actually took it. Id. at 63, 71, 75, 105. From November 2002 through July 2003, plaintiff's performance at the VA hospital declined, and doctors and nurses were deeply concerned about his behavior. Id. at 105-07. On August 8, 2003, plaintiff resigned from the VA hospital due to mental illness and has not worked since. Id. at 38.

In October 2003, the Office of Professional Medical Conduct of the State of New York requested that plaintiff undergo psychiatric evaluation. Id. at 69. The evaluation

diagnosed plaintiff with "Paranoid Schizophrenia," and concluded that plaintiff presented "prodromal symptoms which precede overt psychotic behavior" during his fellowship at Harlem Hospital, "became overtly psychotic" two years after completing the fellowship, and "is currently psychotic." Id. at 74-75. The evaluation also noted that plaintiff was "quite resistant to the notion that he is mentally ill," and recommended that plaintiff not be permitted to practice medicine until he has received proper treatment. Id. at 76. Based on the evaluation and additional expert testimony, the New York Board for Professional Medical Conduct revoked plaintiff's license to practice medicine on June 25, 2004, which was upheld on administrative review. Id. at 89-94.

Since 2003 or 2004, plaintiff has been treated by psychiatrist Dr. Carol W. Berman, who has diagnosed him with borderline personality disorder and obsessive compulsive disorder. Id. at 140; Affirmation in Opposition dated Jan. 31, 2013 ("Millman Aff."), Ex. C (Dkt. No. 15-3).

### III. Insurance Coverage Disputes

In December 2004, plaintiff filed a total disability claim stating that he had been unable to work as a cardiologist since August 2003 due to mental illness. Begos Decl., Ex. C at 42-47. Defendant approved the claim and began paying plaintiff $6,340 per month from October 15, 2003 onward, including an upfront payment of $73,755.33. Id. at 100; Compl. ¶ 13.

From 2005 through 2010, the parties corresponded at length as plaintiff sought to enlarge his claimed period of disability. Compl. ¶¶ 14-24. Plaintiff essentially argued that being unaware of mental illness is a symptom of mental illness, so he was either residually or totally disabled from January 1996 through October 2003 onward, except for (1) March 2002, (2) May 2002 through June 2002, and (3) October 2002 through

6

July 2003 when he earned too much money to qualify for benefits under the policy. Id.; Begos Decl., Ex. C at 37-41, 101-14, 118-36. By claiming a single, continuous disability with brief interludes of ineligibility, plaintiff sought to obtain more benefits, a refund of premiums, and an explanation for his lack of timely notice of claims, while avoiding a second elimination period because there was no twelve month period when he was not disabled. Id.

Defendant accepted most of plaintiff's claims and agreed to waive the notice requirements under the policy, but was initially resistant to the idea that plaintiff suffered from one, continuous disability. Compl. ¶¶ 14, 16, 18-20, 22; Begos Decl., Ex. C. at 115-17. Instead, on three separate occasions, defendant maintained that plaintiff suffered from two, separate disabilities with a gap of more than twelve months and, therefore, was subject to a second elimination period. Id. Then, in June 2010, based on new evidence provided, defendant concluded that plaintiff suffered from the same disability since January 1996, and was not subject to a second elimination period because "there has never been a period of 12 continuous months during which Dr. Suryadevara was not either Residually or Totally Disabled." Begos Decl., Ex. C at 137-38; Compl. ¶ 24. However, since the disability began in January 1996, plaintiff was only entitled to receive $5,530 per month under the policy, instead of $6,340 per month. Id. Defendant then paid plaintiff $169,046.85 to compensate for both the elimination period and unnecessary premiums, offset by the lower monthly benefit. Begos Decl., Ex. C at 147.

When plaintiff realized that his single disability theory resulted in lower monthly benefits, he promptly reversed course and claimed that "upon further and closer review of the diagnoses," he suffered from a new, separate disability in 2003. Begos Decl., Ex.

7

C at 139-41. Specifically, plaintiff alleges that he was diagnosed with an adjustment disorder in 2002 and paranoid schizophrenia in 2003, which "are completely separate categories of disorders." Id.; Compl. ¶¶ 25-27. In correspondence from 2010 through 2012, defendant did not accept plaintiff's position. Compl. ¶¶ 28-30.

## IV. Procedural History

Plaintiff filed this action in the Supreme Court of the State of New York, County of Queens on June 25, 2012, and defendant removed the case to federal court on July 23, 2012. Notice of Removal (Dkt. No. 1). On December 10, 2012, defendant moved to dismiss the Complaint, arguing that plaintiff is estopped from pursuing this action by his prior representations, and that success in this action would render plaintiff's prior representations fraudulent. Defendant's Brief in Support of Motion to Dismiss ("Def.'s Mem.") (Dkt. No. 9). Plaintiff filed his opposition to defendant's motion on January 31, 2013, and, on February 13, 2013, defendant filed its reply. Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n") (Dkt. No. 15); Defendant's Reply Brief in Further Support of Motion to Dismiss ("Def.'s Reply") (Dkt. No. 17).

## DISCUSSION

## I. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the

plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In adjudicating a Rule 12(b)(6) motion, a district court may consider exhibits and documents attached to the Complaint, incorporated into the Complaint by reference, and "integral" to the Complaint. Chambers, 282 F.3d at 152-53.

## II. Breach of Contract Claim

Plaintiff alleges that defendant breached the insurance contract by paying benefits of $5,530 per month from November 2003 onward instead of $6,340 per month. Compl. ¶¶ 42, 46-48. Plaintiff claims that medical evidence demonstrates that he suffered from one mental illness from 1996 through 2002, was not disabled from August 2002 through August 2003, and suffered from a different mental illness from August 2003 onward. Id. ¶¶ 33-34, 37, 43. Since the second period of disability began

9

more than twelve months after the end of the first disability period, it should be a treated as a new, separate disability under the terms of the contract. Id. ¶¶ 39-40. Because the second period of disability began after July 1997, plaintiff is entitled to benefits of $6,340 per month for this disability. Id. ¶¶ 38, 41, 44.

The parties do not dispute the insurance coverage in the contract; rather, they dispute whether plaintiff was disabled from August 2002 through August 2003, and whether he suffered from one or two mental illnesses. Def.'s Mem. at 3-13; Pl.'s Opp'n at 3-4. The Court cannot make that determination at this stage of the litigation, particularly without the aid of expert discovery. Since plaintiff has offered a plausible basis for finding that he suffered from two, separately diagnosed mental illnesses, he has pleaded facts sufficient to survive a motion to dismiss.[4]

## III. Affirmative Defenses

Defendant raises affirmative defenses of equitable estoppel and fraud, arguing that "if Suryadevara proves the truth of his allegations in the complaint, he will be proving the falsity of his prior representations." Def.'s Mem. at 17. Therefore, defendant wants plaintiff "estopped from changing the facts on which his claim was based," otherwise his prior representations will constitute "fraudulent insurance acts" under New York law. Id. at 2, 14-17.

"Equitable estoppel is an 'extraordinary remedy.'" Nasso v. Bio Reference Labs., Inc., 892 F. Supp. 2d 439, 449 (E.D.N.Y. 2012) (quoting Garcia v. Peterson, 820 N.Y.S.2d 901, 901 (2006)). It should only be imposed "to protect the party seeking the

---

[4] Because it is undisputed that the parties entered into a valid contract, the Court dismisses plaintiff's unjust enrichment claim. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc., 448 F.3d 573, 586-87 (2d Cir. 2006).

estoppel from a fraud or injustice perpetrated by the party being estopped." River Seafoods, Inc. v. JPMorgan Chase Bank, 796 N.Y.S.2d 71, 76 (1st Dep't 2005). Under New York law, the party seeking the estoppel must show:

> (1) an act constituting a concealment of facts or a false misrepresentation; (2) an intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; (4) reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.

Nasso, 892 F. Supp. 2d at 449 (quoting Gen. Elec. Capital Corp. v. Eva Armadora, S.A., 37 F.3d 41, 45 (2d Cir. 1994)).

New York defines "insurance fraud in the second degree" as committing a "fraudulent insurance act" to "wrongfully take, obtain or withhold property with a value in excess of fifty thousand dollars." N.Y. Penal Law § 176.25 (McKinney 2012). A fraudulent insurance act is:

> committed by any person who, knowingly and with intent to defraud presents . . . any written statement as part of, or in support of . . . a claim for payment or other benefit pursuant to an insurance policy . . . that he or she knows to: (a) contain materially false information concerning any fact material thereto; or (b) conceal, for the purpose of misleading, information concerning any fact material thereto.

Id. at § 176.05. Courts interpreting these provisions hold that a fraudulent insurance act, much like equitable estoppel, requires a knowing misrepresentation or omission. Sterling Ins. Co. v. Chase, 731 N.Y.S.2d 778, 780 (1st Dep't 2001). "The misrepresentation must be one of fact, and an opinion or misrepresentation of law will not suffice." In re Zarro, 268 B.R. 715, 722 (Bankr. S.D.N.Y. 2001) (citing Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971)).

Defendant's affirmative defenses are unpersuasive because plaintiff has not made any misrepresentations of fact. Every alleged misrepresentation claimed by defendant is

either plaintiff's reliance on psychiatric diagnoses, or his interpretation of the insurance policy, Def.'s Reply at 2-3, neither of which constitutes a misrepresentation of fact. MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d 682, 714 (S.D.N.Y. 2012). Moreover, when plaintiff asserted his disputed claim, he did so based on the same medical diagnoses that defendant had been aware of for months, if not years. Begos Decl., Ex. C at 139-41; Millman Aff., Ex. A. Plaintiff's claim for benefits for the disparate periods was based upon the medical characterization of his disability during each period, which would be known to and accepted by defendant.

What is before the Court is, in essence, a determination of whether plaintiff's psychiatric condition from 1996 through 2002 continued thereafter, or whether plaintiff was afflicted with a separate psychiatric condition in 2003. The Court can make no such determination without expert testimony and, therefore, denies defendant's motion to dismiss.

## CONCLUSION

For all of the foregoing reasons, defendant's motion is hereby DENIED.

SO ORDERED.

Dated: Brooklyn, New York
April 19, 2013

/s/
I. Leo Glasser
Senior United States District Judge