UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
RAO SURYADEVARA,

        Plaintiff,                          MEMORANDUM AND ORDER

   - against -                            12 CV 3651 (ILG) (RER)

UNUM GROUP,

        Defendant.
------------------------------------------------------x
GLASSER, United States District Judge:

Plaintiff Rao Suryadevara ("Suryadevara") brings this action against Unum Group ("Defendant") for breach of contract of a disability insurance policy, seeking money damages and a declaratory judgment. Suryadevara claims that he suffered from two separate and unrelated periods of disability and, therefore, is entitled to greater benefits than he is currently receiving under the policy. Currently before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, Defendant's motion is hereby DENIED.

## BACKGROUND

### I. Facts

Unless otherwise noted, the following facts are undisputed. In 1992, Defendant issued Suryadevara the disability insurance policy that underlies his claims in this action (the "Policy"). Compl. [Dkt. No. 1] ¶ 7. Among other things, the Policy provided for an initial maximum monthly benefit of $4,500 per month for total disability, Begos Decl. [Dkt. No. 25-2], Ex. D at 60, which increased each year until 1997 according to the following schedule:

1

| Update Increase Date | New Monthly Benefit for Total Disability |
|---|---|
| July 1, 1993 | $4,820 |
| July 1, 1994 | $5,160 |
| July 1, 1995 | $5,530 |
| July 1, 1996 | $5,920 |
| July 1, 1997 | $6,340 |

Id. at 62. The Policy provided that a "[b]enefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability." Id.

The Policy further provided that "'period of disability' means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period: 1. is due to a different or unrelated cause, or 2. starts more than twelve months after the end of the previous period . . . in which event the later period will be a new or separate period of disability." Id. at 63.

In 1995, Suryadevara began a cardiology fellowship at Harlem Hospital, where he remained until 1998. Millman Aff. [Dkt. No. 32], Ex. B at 3. From 1998 through 2001, he worked as an attending physician in the emergency department at New York Community Hospital. Id. In 1996, Suryadevara began behaving erratically, which behavior included following his supervisor, Dr. Eric Vanderbush ("Vanderbush") out of the hospital and continuing conversations after they ended. Id. at 4. At some point, Suryadevara also began experiencing hallucinations and delusions, which in 2000, led to his filing a lawsuit seeking $1,000,000,000 in damages against Vanderbush, Paramount Pictures, 20th Century Fox, and James Cameron. Id. at 5. The lawsuit alleged that they had conspired to steal the plot for a movie he had narrated and had used it to write the screenplay for "Titanic." Id. Suryadevara also expressed the belief

2

that he had originated the plots of "Gone in 60 Seconds" and "Mission Impossible: 2." Id. at 5.

In 2001, Suryadevara joined the cardiology department at the Veterans Affairs Hospital in Danville, Illinois. Id. at 3. On two occasions in 2002, Suryadevara called the police as a result of hearing voices he thought were real. Id. at 6. On the second occasion, on July 1, 2002, the police took Suryadevara to the emergency room, where he was diagnosed with "acute psychosis." Begos Decl., Ex. E; id. Ex. D at 103–04. As a result, Suryadevara was placed on medical leave until September 16, 2002. Millman Aff., Ex. B at 6; Begos Decl. Ex. D at 182–83. Following his return to work, he continued to experience performance problems, and ultimately resigned on August 9, 2003. Millman Aff., Ex. B at 6. On June 25, 2004, the New York Board for Professional Medical Conduct revoked Suryadevara's license to practice medicine, on the grounds that he had practiced while mentally ill. Id. at 17. The determination was upheld on administrative review on October 20, 2004. Begos Decl., Ex. D at 140.

On December 13, 2004, Suryadevara submitted a claim for disability benefits, alleging that he became disabled as of August 9, 2003 due to mental illness. Compl. ¶¶ 12–13. Defendant approved the claim on December 22, 2004 and began paying Suryadevara disability benefits in the amount of $6,340 per month, retroactive to October 15, 2003. Id. ¶ 13. Suryadevara thereafter sought additional disability benefits dating back to January of 1996. Id. ¶¶ 14–17. Defendant investigated this new claim and ultimately determined that Suryadevara was residually, or partially, disabled from January 1996 through April 2002, with the exception of certain months in which his earnings were too high to qualify for benefits. Id. ¶¶ 18–24; Begos Decl. Ex. D at 186–87. In addition, Defendant determined that Suryadevara was totally disabled from July

1, 2002 through September 16, 2002, and from August 10, 2003 through the present. Compl. ¶¶ 18–24; Begos Decl. Ex. D at 186–87. Because Defendant determined that Suryadevara became disabled in January of 1996, the maximum monthly benefit due to Suryadevara pursuant to the benefits schedule in the Policy was $5,530 per month, rather than the $6,340 per month it had been paying him. Compl. ¶ 18; Begos Decl. Ex. D at 186–87.

Suryadevara disputed these determinations, and argued that he is entitled to the higher monthly benefit for his claim from August 9, 2003 through the present. First, he argued that the mental illness he suffered in August of 2003 was of a different kind than the illness he had experienced during his prior period of disability from 1996 through 2002. Compl. ¶¶ 25–27. Second, Suryadevara argued that he had neither applied for disability benefits nor suffered lost pay between July of 2002 and August of 2003, and therefore he was not disabled for a continuous twelve-month period prior to becoming totally disabled on August 9, 2003. Id. ¶ 29. Defendant rejected these claims and this litigation followed.

## II. Procedural History

Suryadevara initiated this action on June 25, 2012 in the Supreme Court of the State of New York, County of Queens, and defendant removed the case to federal court on July 23, 2012. Dkt. No. 1. On December 10, 2012, Defendant moved to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 8. Defendant's motion was denied by Memorandum and Order dated April 19, 2013. Dkt. No. 21. Discovery, including expert discovery, followed.

On December 11, 2013, Defendant moved for summary judgment, arguing that Suryadevara's treating psychiatrist and expert witness admit that Suryadevara

4

experienced psychotic symptoms and suffered from a psychotic disorder during both purported periods of disability, and accordingly there is no genuine issue of material fact regarding the existence of a second, distinct period of disability. Dkt. No. 25-4 ("Def.'s Mem."). Suryadevara filed his opposition on February 10, 2014. Dkt. No. 31 ("Pl.'s Opp'n"). Defendant filed its reply on March 4, 2014. Dkt. No. 34 ("Def.'s Reply").

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quotation omitted).

The moving party bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A court deciding a motion for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted). When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim. Celotex, 477 U.S. at 322–23. To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)), and

cannot "rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quotation omitted).

## II. Breach of Contract

As both parties acknowledge, resolving this case ultimately involves a narrow question. See Def.'s Mem. at 5–6; Pl.'s Opp'n at 5. The parties agree that Suryadevara's disability from 1996 through 2002 was caused by Psychotic Disorder Not Otherwise Specified ("NOS"). But they disagree as to the cause of Suryadevara's disability from 2003 through the present. Defendant asserts, based largely on the testimony of its expert, Dr. David Lowenthal ("Lowenthal"), that Suryadevara continued to experience psychotic symptoms after 2003 and therefore continued to suffer from the same disability. Def.'s Mem. at 8–11. Suryadevara disagrees, pointing to testimony from his expert, Dr. David Salvage ("Salvage"), that he became disabled due to Obsessive-Compulsive Disorder beginning in 2003. Pl.'s Opp'n at 5–7. In addition, he argues that the mere existence of psychotic symptoms does not establish that he still suffered from Psychotic Disorder NOS. Id. at 8–9.

At the outset, it should be noted that "[w]here, as here, there are conflicting expert reports presented, courts are wary of granting summary judgment." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 79 (2d Cir. 2002). This is unsurprising, since the court's task "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). Accordingly, where "intelligent adjudication requires more than the use of lay knowledge and the resolution of a disputed issue hinges in large measure upon conflicting opinions and judgments of

6

expert witnesses, summary judgment is not appropriate." Klein v. Tabatchnick, 610 F.2d 1043, 1048 (2d Cir. 1979).

This is precisely such a case. Whether Suryadevara is entitled to a higher monthly benefit under the Policy ultimately rests on the diagnosis for the condition that has caused him to be disabled since 2003. The parties have offered conflicting expert testimony as to that diagnosis, and indeed Suryadevara's treating psychiatrist has offered a third alternative diagnosis.[1] See Begos Decl., Ex. G at 239, 248. It is clear, then, that adjudicating this case "hinges in large measure"—if not entirely—on resolving the "conflicting opinions and judgments of expert witnesses." Accordingly, summary judgment is inappropriate.

Defendant's arguments to the contrary are unavailing. Notably, Defendant does not seek to preclude Salvage's testimony. Instead, Defendant asserts that Salvage's testimony is rife with contradictions and admissions, such that his conclusion—his diagnosis—creates only a sham issue of fact. It is well established that a party cannot defeat summary judgment simply by offering expert evidence that contradicts previous sworn testimony. In re Fosamax Prods. Liab. Litig., 707 F.3d 189, 193 (2d Cir. 2013). But a sham issue of fact exists only when "the contradictions in an expert witness's testimony are inescapable and unequivocal in nature." Id. at 194. Salvage's testimony does not contain "inescapable and unequivocal" contradictions.

In the first place, some of the supposed contradictions and admissions are taken out of context. For example, Defendant points to an instance where Salvage appears to concede that in October of 2003—during the alleged second period of disability—

---

[1] Suryadevara's treating psychiatrist offered a diagnosis of Borderline Personality Disorder ("BPD"). Begos Decl., Ex. G at 239, 248. Unlike Salvage and Lowenthal, she disagrees that Suryadevara suffered from Psychotic Disorder NOS from 1996 to 2002. She believes instead that Suryadevara suffered from BPD during both periods of disability, and that his psychotic symptoms were the result of stress. Id.

7

Suryadevara continued to suffer from the same psychotic disorder that caused his first period of disability. Def.'s Mem. at 13 (quoting Begos Decl., Ex. I at 323). But Defendant omits the fact that Salvage was responding to questions related to a psychiatric evaluation of Suryadevara performed in October of 2003 that he had not previously reviewed. Begos Decl., Ex. I at 321. And more importantly, Defendant omits the fact that, after reviewing that evaluation in more depth, Salvage clarified his earlier testimony. Id. at 324. He explained that the report was flawed because it was the result of inadequate examination and attributed certain symptoms to Suryadevara without justification, and that accordingly he no longer agreed with its conclusions. Id. In light of this clarification, and construing the evidence in favor of the non-movant, the Court cannot conclude that Salvage's earlier statement was an inescapable and unequivocal contradiction.

Defendant also points to admissions and contradictions in Salvage's testimony related to the existence of psychotic symptoms during Suryadevara's second period of disability. See Def.'s Mem. at 7–11. Neither Salvage nor Suryadevara's treating psychiatrist disputes the existence of these symptoms, but this does not render Salvage's conclusion contradictory. As both of these doctors explained, these symptoms, standing alone, do not establish that Suryadevara continues to suffer from—or, more precisely, to be disabled by—Psychotic Disorder NOS. Begos Decl., Ex. G at 277; id., Ex. I at 339. Indeed, Salvage specifically considered those symptoms, but noted that they appeared to be largely controlled by antipsychotic drugs, and ultimately concluded that Suyardevara is <u>disabled</u> due to his Obsessive-Compulsive Disorder. Id., Ex. I at 310–11. To the extent that Defendant asserts that Salvage's conclusion is not credible, this is simply irrelevant at the summary judgment stage. Scanner Techs. Corp. v. Icos Vision Sys. Corp., 253 F.

Supp. 2d 624, 634 (S.D.N.Y. 2003) ("The credibility of competing expert witnesses is a matter for the jury, and not a matter to be decided on summary judgment."). The conflicting conclusions of Suryadevara's and Defendant's expert witnesses as to the cause of Suryadevara's disability create a genuine issue of material fact. Accordingly, summary judgment is inappropriate.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion is hereby DENIED.

SO ORDERED.

Dated: Brooklyn, New York
March 28, 2014

/s/
I. Leo Glasser
Senior United States District Judge